(No. 74-662—)

CHICAGO WIRE, IRON AND BRASS WORKS, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF CORRECTIONS and DAN FOGEL, Respondents.

*Opinion filed April 4, 1977.*

SUDAK, GRUBMAN, ROSENTHAL & FELDMAN BY LARRY KARCHMAR, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; RICHARD J. GROSSMAN, Assistant Attorney General, for Respondent.

POLOS, C. J.

This is an action to recover the sum of $1,494.00 which Claimant, Chicago Wire, Iron and Brass Works, Inc., alleges it is due on a contract for the manufacture of detention screens for the Illinois Department of Corrections.

Claimant is in the business of weaving steel and iron into finished iron products to be used for security purposes. It supplies security screening for various governmental agencies and private companies.

In August, 1972, the Vice President of Claimant, William J. Noelle, received a request from the Illinois Department of Corrections to supply and install security screens for its facilities at 2551 North Clark, Chicago. The facility, a community based correctional center,

housed teenagers—some voluntarily and some as parolees.

Mr. Noelle visited the facility and met with the building engineer, Michael O'Sullivan, and Mr. Allen C. Brandt, Assistant Superintendent of the facility. The representatives of the Department of Corrections informed Mr. Noelle that the residents had been throwing objects out of the window, and the facility had received complaints from pedestrians on the sidewalk outside the building. Mr. Noelle testified that he was told that the Center needed devices that would prevent solid objects from being thrown out of the windows. Mr. Brandt testified that he specifically requested devices to prevent the throwing of all objects out the window, including liquids. Mr. Noelle said that he informed Mr. Brandt and Mr. O'Sullivan that he would install half-diamond, woven mesh screens on the windows, and that detailed specifications would be mailed to them. Mr. Noelle then measured the window openings designated for the security screens.

On February 16, 1973, Claimant sent a proposal to the Department of Corrections for the covering of the windows at the State facility from the second to the eighth floors. The proposal referred to the product as "detention screens" and contained the specifications for the screens as "one and one-half inch woven diamond number nine, one-half hard galv., three-eighths rod frame," and further specified the type of locks and fastenings in detail.

Because of cost factors, Mr. Noelle was requested to resubmit a proposal covering only three floors of windows and to have the screens attached to the building from the inside rather than from the outside as had been previously proposed. On February 26, 1973, a second

proposal was submitted using the same language for the specifications. The proposal was for $1,490.00 and was sent to Mr. O'Sullivan.

The proposal was routed through the State's purchasing processes including the Office of Supervising Architect of the Department of General Services who executed an acceptance of the proposal. Mr. Noelle executed on behalf of the Claimant forms required by the State of Illinois, which contained among others, the following provisions:

(1) That time is of the essence of this acceptance and all work shall commence forthwith and shall be completed not later than April 15, 1973 and

(3) That if the Contractor persistently fails to supply enough properly skilled workmen or material, or fails to replace unsuitable work or material or otherwise be guilty of a substantial violation of the provisions of this acceptance, then the State, upon the Certificate of the Office of Supervising Architect that sufficient cause exists to justify such action may, without prejudice to any other right or remedy, and after giving the contractor three days written notice, withhold all further payments, terminate the employment of the contractor and take possession of all materials, tools and appliances on the premises.

Claimant thereafter proceeded to manufacture the screens according to the specifications. On May 3, 1973, the screens were delivered to the facility and after some were installed, Mr. Brandt stopped the work and demanded the removal of the screens which were already installed. The sole reason given for this demand was one of appearance. According to Mr. Brandt, the screens which looked like chain link fencing gave the facility the appearance of a prison. The screens were however in conformity with the specifications. The objection of the State was that the product was sufficient but the style was not sufficient.

The screens were removed and were left at the facility where they are still stored.

Claimant sent to the Department of Corrections an invoice of $992.00 being the contracted amount of

$1,490.00 less credits for unexpended labor and parts not used in the amount of $498.00.

The screens were custom made and specially sized for this job and had no value other than covering the measured window openings.

The Respondent contends that the Claimant is not entitled to recover on one or more of the following grounds:

(1) That there was an implied warranty of fitness for the purpose intended; that Respondent relied on Claimant's expertise; and the implied warranty was breached in that the product was not useful for that type of facility.

(2) That time was of the essence of the contract and that Claimant failed to perform on time, which constituted a breach.

(3) That there was never a valid contract because there was never a mutuality of assent.

(4) That if there was a valid contract, Claimant's damages were not proven with certainty.

As to the contention that there was an implied warranty of fitness for purpose intended, the Court agrees that where the seller of a product has reason to know the particular purpose for goods and buyer relies on the seller's skill and judgment, there is an implied warranty of fitness for the specific purpose. Uniform Commercial Code, Ill.Rev.Stat., Ch. 26, § 2-315.

However, this provision is not applicable here. In this case, there is no evidence that the Claimant was told anything about appearance. There is no evidence that the Claimant knew or was told the exact nature of the Center except that it was a correctional facility

operated by the Department of Corrections. Claimant had no reason to know that Respondent would not appreciate the facility having windows looking "prison-like."

The goods did, in fact, fit the intended purpose of preventing the throwing of objects out the windows. Even if one agrees with the testimony of the Respondent's witness that the Claimant was informed that Respondent wanted the screens to prevent liquids from being thrown out the windows, it is apparant that no screen could fully meet that purpose.

In any event, Respondent had full opportunity to check the specifications. Although the Assistant Superintendent and Building Engineer testified that they did not understand the technical language in the proposal, the office of the Supervising Architect knew, or should have known, the meaning of the specifications. The proposal was clear in that it showed the mesh size as one and one-half inches, and even a layman could understand that there was one and one-half inches of space between the wire strands. Further, the screens were described as "detention screens."

It is clear to the Court that Respondent understood, or should have understood, what was proposed and accepted the proposal as submitted. Therefore, the implied warranty of fitness for intended purpose was not breached.

The Court must likewise reject Respondent's contention that there was a breach of contract by failing to perform in a timely manner. It is true that Claimant delivered the goods two and one-half weeks after the contract date. But no complaint was made by Respondent as to the delay. The refusal to accept was based on the appearance of the product, not the time of delivery.

Further, the Respondent never sent a three-day notice to the Claimant as required by Paragraph 4 of the contract between them. It cannot avail itself of the time provision of the contract unless it complied with the termination provisions in the very same contract.

Respondent's contention that there was no mutuality of assent is without merit. Respondent cites *Globe Brewing Company vs. Simon,* 132 Ill.App. 158, 202; *Utley vs. Donaldson,* 94 U.S. 29, 48; 24 L.Ed. 54; and *Bank of Marion vs. Robert Fritz, Inc.,* 291 N.E.2d 836, 9 Ill.App.3d 102, 108. None of these cases have any applicability to the facts in this case. Respondent argues that the word "screens" had a different meaning to each of the parties. That may have been true, but the specifications in the proposal were not susceptible to more than one meaning. Certainly the office of the Supervising Architect of General Services understood those specifications. Certainly the Department of Corrections which operates the correctional institutions of the State of Illinois had on previous occasions purchased security screens or detention screens for its various institutions. The fact that Mr. Brandt or Mr. O'Sullivan did not personally understand the specifications does not excuse the Respondent who had access to all of the resources of the State government to ascertain the nature of the specifications. If a mistake was made, it was an unilateral mistake by Respondent. As expressed in *New Amsterdam Import Co. vs. L & S Development & Transfer Co.,* (113 N.Y.S. 864):

Defendant's unilateral mistake of fact was not such as could relieve it of its obligations under the contract since Plaintiff changed its position in reliance on the agreement.

As to Respondent's contention that the damages were not proven, it is clear that the purchase price was $1,494.00. The State is entitled to credit for the unex-

pended labor and for material not delivered which testimony revealed to be $498.00.

This Court stated in *George C. Petersen Co. vs. Illinois,* 10 Ill.Ct.Cl. 673:

Where a contract is breached by a party in failing and refusing to accept goods contracted for, the proper measure of damages for such breach is the loss of profits suffered by the other party to the contract occasioned by such nonacceptance, less any expenses that would have been necessarily incurred by him in performing his part of the contract.

In this case the lost profit is the difference between the purchase price of $1,494.00 and the unexpended labor and material in the amount of $498.00. Respondent is not entitled to any credit for the product delivered inasmuch as it is worthless to the Claimant according to Claimant's undisputed testimony.

It is therefore ordered that Claimant, Chicago Wire, Iron and Brass Works, is awarded the sum of Nine Hundred Ninety-Two Dollars ($992.00).